UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

GE TRANSPORTATION (SHENYANG) CO., LTD.,

                         Petitioner,

        -v-

A-POWER ENERGY GENERATION SYSTEMS, LTD.,

                         Respondent.

-----------------------------------------------------------------------X

15 Civ. 6194 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/23/15

PAUL A. ENGELMAYER, District Judge:

      Petitioner GE Transportation (Shenyang) Co., Ltd. ("GET"), seeks a preliminary

injunction freezing $476,700,190.49 of assets belonging to respondent A-Power Energy

Generation Systems, Ltd. ("A-Power") and related entities, and ¥54,000,000 belonging to Asia

New Energy Group Limited ("Asia New Energy"), so as to preserve GET's ability to collect on

an arbitration award that was rendered in favor of GET against A-Power.  For the reasons that

follow, the preliminary injunction is granted.

## I.    Background

      On August 7, 2015, GET filed a petition to confirm an arbitration award, Dkt. 4 ("Pet."),

along with attached exhibits, and a supporting memorandum of law, Dkt. 3 ("Pet. Br.").  The

award was issued on August 8, 2012 by the Hong Kong International Arbitration Centre Tribunal

for $359,997,368.50 plus interest at the rate of $103,368.31 per diem. Pet. 1–2; Dkts. 4-1 and 4-

2 (the "Award").  It was issued as a result of a default by Shenyang Lucky Wind Power

Equipments Co., Ltd. ("Lucky Wind"), a wholly owned subsidiary of A-Power, on an agreement,

guaranteed by A-Power, to purchase from GE Commerce Shanghai Co., Ltd. ("GE Commerce")

minimum quantities of wind turbine gearboxes over a three year period. Pet. Br. 2–3.  GET also

obtained an order from the High Court of the Hong Kong Special Administrative Region Court of First Instance ("High Court") enforcing the Award, as well as an order finding A-Power's chairman, chief executive officer, and legal representative guilty of contempt for diminishing the value of A-Power's assets. *Id.* at 4.

On September 10, 2015, GET filed a motion for an *ex parte* order to show cause ("OTSC") why the Court should not, *inter alia*, temporarily restrain A-Power and its alter ego, Jinxiang Lu, from transferring or dissipating assets; issue a preliminary injunction freezing $476,700,190.49 belonging to A-Power and related entities, and ¥54,000,000 belonging to Asia New Energy; and issue an order of attachment for assets in those same amounts. Dkt. 10. GET filed a memorandum of law in support of its motion for an OTSC, Dkt. 11 ("Pet. OTSC Br."), as well as supporting affidavits and exhibits.[1]  On September 14, 2015, the Court issued the OTSC, scheduled a hearing for September 18, 2015, and pending the hearing, granted a temporary restraining order enjoining A-Power or Lu from transferring or dissipating assets, freezing the assets of A-Power and related entities, and granting GET leave to conduct expedited discovery of assets held by A-Power, Lu, and related entities in New York. Dkt. 14.

On September 18, 2015, the Court held a show cause hearing, at which counsel for GET participated, but no representative for A-Power appeared. At the hearing, the court extended the temporary restraining order for two weeks, pursuant to Federal Rule of Civil Procedure 65(b), and scheduled another show cause hearing two weeks later. Dkt. 16. This two-week cycle of show cause hearings and temporary restraining orders has continued until now, with the Court

---

[1] Among the exhibits are documents establishing the connection between A-Power and the related entities against whom the preliminary injunction is sought. *See* Dkt. 11-7 (A-Power 2010 Form 20-F, filed with the Securities and Exchange Commission on March 31, 2010); Dkt. 11-6 (General Electric Co. (China)'s A-Power Investigative Report, dated December 12, 2012).

holding hearings at which GET appeared and presented updates on its efforts to serve A-Power and identify A-Power's assets, and with the Court issuing orders to show cause and temporary restraining orders, on October 2, 2015, Dkt. 21, October 16, 2015, Dkt. 24, October 30, 2015, Dkt. 28, and November 13, 2015, Dkt. 31.  To date, A-Power has not participated in any of the show cause hearings, or otherwise appeared in this matter.

During this period, GET made various attempts to serve A-Power.  On September 17, 2015, pursuant to Articles 2 through 7 of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents, GET effected service of all the relevant documents in this matter, including the September 14, 2015 e*x parte* OTSC, on the Ministry of Justice, People's Republic of China, China's registered agent for service under the Convention.[2]  *See* Dkt. 15.  On October 30, 2015, GET filed a motion to serve A-Power through alternative means, Dkt. 25, along with a supporting memorandum of law, Dkt. 26, and an affidavit by Joseph L. Clasen, Dkt. 27, with exhibits attached.  In the affidavit, Clasen, GET's counsel, stated that in addition to service on the Ministry of Justice, GET had attempted to serve A-Power and Lu through other means, including: service on Lu's last known personal address; service on A-Power and Lu at an address recently deemed sufficient by a Chinese court; service on A-Power's registered agent in New York while A-Power was listed on the NASDAQ Stock Market; service on A-Power's last registered business address in the British Virgin Islands; service upon A-Power Energy Generation Systems USA, Ltd.'s ("A-Power Delaware") registered agent of service in Delaware; and service at Lu's last known email address, which remains active.  Dkt. 27, ¶ 5.  Clasen also stated that in the course of conducting expedited discovery, GET had served subpoenas on

---

[2] A-Power is incorporated under the laws of the British Virgin Islands, with its principal executive offices in China.  Pet. ¶ 4.

various financial institutions in New York, and had identified and frozen approximately $10,000

in accounts held by A-Power and A-Power Delaware at Morgan Stanley Smith Barney.  *Id.* ¶ 6.

On November 2, 2015, the Court further approved alternative service through Lu's last known

email address, Dkt. 29, and on November 3, 2015, GET served A-Power and Lu by emailing

Lu's last known email address with all the relevant documents in this matter, *see* Dkt. 30.

At the most recent show cause hearing, held on November 13, 2015, with the Court

having approved service on Lu's last known email address and such service having been

effected, *see* Fed. R. Civ. P. 65(a)(1) (requiring notice for the issuance of a preliminary

injunction), GET asked the Court to consider its request for a preliminary injunction freezing

$476,700,190.49 belonging to A-Power and related entities and ¥54,000,000 belonging to Asia

New Energy.

**II.    Discussion**

The decision to grant or deny a preliminary injunction rests in the district court's sound

discretion.  *See Am. Exp. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 232 (2d Cir. 1998).  To

obtain a preliminary injunction in the Second Circuit, a party must demonstrate: "(a) irreparable

harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions

going to the merits to make them a fair ground for litigation and a balance of hardships tipping

decidedly toward the party requesting the preliminary relief."  *Citigroup Global Mkts., Inc. v.

VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson

Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1976)) (internal quotation marks

omitted).

**A.    Irreparable Harm**

Under this prong, GET "must demonstrate that absent a preliminary injunction they will

suffer an injury that is neither remote nor speculative, but actual and imminent, and one that

cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp.*

*Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Enter. Six*

*Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)) (internal quotation mark omitted).

Typically, "[w]here there is an adequate remedy at law, such as an award of money damages,

injunctions are unavailable except in extraordinary circumstances." *Id.* (quoting *Moore v.*

*Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)).  One such "exception is a

showing of intent to frustrate any judgment on the merits." *Sea Carriers Corp. v. Empire*

*Programs, Inc.*, No. 04 Civ. 7395 (RWS), 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006)

(citing *Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986) and *In re Feit &*

*Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985), which granted injunctions against actions taken

by parties to encumber or hide assets).

GET has demonstrated that a preliminary injunction is appropriate here to prevent A-

Power from attempting to avoid the consequences of a potential judgment against it and thereby

preserve GET's ability, to the extent possible, to collect on monies owed to it.  Indeed, Lu has

already been held guilty of contempt for violating orders of the High Court by diminishing A-

Power's assets by authorizing the transfer of 100% of the shares of a company, Liaoning Gaoke,

held by Head Dragon, an A-Power subsidiary, to Asia New Energy in exchange for ¥54,000,000

(a little less than $8.5 million), and depositing the proceeds of the transfer in an unknown bank

account.  *See* Pet. OTSC Br. 13; Dkt. 11-4 (judgment of contempt).

The Court finds, based on the submissions offered by GET, that Lu's "past predilection

for deceptive and fraudulent practices is likely to continue," *Gelfand v. Stone*, 727 F. Supp. 98,

102 (S.D.N.Y. 1989), and that, in the absence of a preliminary injunction, GET will be

irreparably harmed by its inability to collect on an the arbitral judgment it seeks to confirm.

###### B.       Likelihood of Success on the Merits

GET has also established its likelihood of success on the merits of confirming the arbitration award.  Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08, which codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "New York Convention"), governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered as commercial," except when those relationships are "entirely between citizens of the United States" and are otherwise domestic in nature.  9 U.S.C. § 202.  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citations and internal quotation marks omitted).  A district court's review of an arbitration decision is limited; indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

On August 8, 2012, the Hong Kong International Arbitration Centre Tribunal, after receiving evidence and conducting a hearing with both parties, awarded GET damages resulting from A-Power's guarantee of the agreement with Lucky Wind.  *See* Pet. Br. 3–4; Award.  By order dated October 19, 2012, the Award was confirmed by the High Court.  Dkt. 4-6.  GET has also provided the Court with documentation supporting the Award, including the agreement with

Lucky Wind, Dkts. 4-3 and 4-4, and A-Power's guarantee of the agreement, Dkt. 4-5.[3]  After consideration of GET's submissions and the lenient standard for confirmation of an arbitral award, the Court finds that GET has met its burden for establishing the likelihood of its success on the merits.

## CONCLUSION

For the foregoing reasons, the Court grants GET's request for a preliminary injunction freezing $476,700,190.49 ($359,997,368.50 in principal, plus $116,702,821.99 in accrued interest) of assets belonging to A-Power, Jinxiang Lu, Head Dragon Holdings Limited, Liaoning GaoKe Energy Group Company Limited, Liaoning GaoKe (High-Tech) Energy Saving and Thermo–electricity Design Research Institute, Liaoning International Construction and Engineering Group Limited, Shoulong Energy Co., Ltd., Shenyang Power Group Ltd., EVATECH Co., Ltd., Easy Flow Limited, Shenyang (Jinxiang) Gold Luck Electric Power Equipment Co., Ltd., Shenyang (Ruixiang) Lucky Wind Power Equipments Co., Ltd., Shenyang Longxiang Wind Power Technologies Limited, and Shenyang Yixiang Wind Power Equipment Limited, and freezing ¥54,000,000 of assets belonging to Asia New Energy.

In accordance with this Court's Order Authorizing Alternative Service on A-Power Energy Generation Systems, Ltd. and Jinxiang Lu dated November 2, 2015, Dkt. 29, GET or its attorneys shall effect service of a copy of this Opinion and Order by serving the same upon A-Power and its alter ego, Jinxiang Lu, via email directed to Mr. Lu's last known personal and

---

[3] The Court notes that the agreement and guarantee are written predominantly in Chinese characters.  However, the Award, which is detailed and thorough, is written in English and contains English translations and descriptions of the pertinent provisions.  *See, e.g.*, Award ¶ 71 (describing the agreement); *id.* ¶ 73 (describing the guarantee).

operative email address, shoulong@188.com, which shall be deemed good and sufficient service and notice thereof.

In light of the Court's grant of the preliminary injunction, the Court adjourns the show cause hearing scheduled for November 25, 2015. GET is directed, every 30 days from the date of this Opinion and Order, to file a letter updating the Court on its efforts to identify and locate assets of the above entities. GET is further directed to alert the Court promptly if material developments occur. GET's letters should state what, if any, further actions it then intends to take in this Court with respect to its petition.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: November 23, 2015
      New York, New York