UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

GE TRANSPORTATION (SHENYANG) CO., LTD.,

                       Petitioner,

        -v-

A-POWER ENERGY GENERATION SYSTEMS, LTD.,

                       Respondent.

------------------------------------------------------------------X

15 Civ. 6194 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/22/16

PAUL A. ENGELMAYER, District Judge:

      This decision resolves a petition to confirm and enforce a foreign arbitration award. On August 6, 2015, petitioner GE Transportation (Shenyang) Co., Ltd. ("GET") filed a petition to confirm an arbitration award pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, 9 U.S.C. §§ 201–08 (the "New York Convention"); *see also* 9 U.S.C. § 203 (giving U.S. district courts original jurisdiction over actions or proceedings falling under the New York Convention). Dkt. 4 (the "Petition" or "Pet."). In addition to confirmation and enforcement of the arbitration award through the entry of judgment in the amount of $476,700,190.49 against respondent A-Power Energy Generation Systems, Ltd. ("A-Power"), which was also the only respondent in the underlying arbitration proceeding, GET also seeks enforcement of the arbitration award and entry of judgment jointly and severally against various entities related to A-Power under an alter-ego theory of liability. GET also requests a permanent injunction freezing all assets belonging to A-Power and related entities so as to preserve GET's ability to collect on the arbitration award. A-Power has not opposed the Petition or otherwise appeared in this action.

For the reasons that follow, the Court confirms the arbitration award, enters judgment in favor of GET against A-Power in the amounts specified under the award, and grants GET a permanent injunction restraining A-Power from transferring or otherwise dissipating its assets pending full payment of the judgment. However, the Court finds that it cannot reach in this proceeding the issue whether the arbitration award should be enforced against the other entities specified by GET under an alter-ego theory of liability. The Court therefore does not, in this action, enter judgment or issue an injunction against those other entities.

## I. Background

### A. Factual Background[1]

This matter stems from a default by Shenyang Lucky Wind Power Equipments Co., Ltd. ("Lucky Wind"), a wholly owned subsidiary of A-Power, on an agreement, guaranteed by A-Power, to purchase from GE Commerce Shanghai Co., Ltd. ("GE Commerce") minimum quantities of wind turbine gearboxes over a three-year period. GET. Br. 2–3. GE Commerce later assigned its rights and obligations under the agreement and the guarantee to GET. Pet. ¶ 12; Award ¶¶ 78, 86.

GET is a corporation organized under the laws of the People's Republic of China, with its registered business address in Liaoning Province, China. Pet. ¶ 3. A-Power is a company incorporated under the laws of the British Virgin Islands, with its registered business address in the British Virgin Islands and its principal executive offices in Liaoning, China. Id. ¶ 4.

On March 3, 2009, Lucky Wind entered into an agreement to purchase wind turbine gearboxes from GE Commerce (the "Agreement"), and that same day, A-Power entered into an

---

[1] The following facts are derived from the Petition; GET's memorandum of law in support, Dkt. 3 ("GET Br."); and the Final Award of the arbitration panel (the "Award"), dated August 8, 2012, Pet., Ex. A.

agreement with GE Commerce to guarantee Lucky Wind's purchase agreement (the "Guarantee"). *Id.* ¶¶ 11–12. The Guarantee provides that "[A-Power] shall be jointly and severally liable with [Lucky Wind], as principal debtor and not as surety, for the due payment and full performance of the Obligations." Award ¶ 73 (quoting the Guarantee) (second alteration in the Award).[2] The Guarantee further provides that it is to be governed by New York law. *Id.*

Around the summer of 2010, a dispute arose concerning Lucky Wind's failure to make progress payments in accordance with the payment schedule set out in the Agreement. Pet. ¶ 13; Award ¶ 89. After sending several notices of default and payment demands, on March 28, 2011, GET sent a notice of termination of the Agreement to Lucky Wind, and thereafter demanded payment from A-Power under the Guarantee. Award ¶¶ 89–96.

B.   Arbitration

GET filed a claim for payment for the full amount of the Guarantee from A-Power in the Hong Kong International Arbitration Centre ("HKIAC"). Pet. ¶ 13. Paragraph 18 of the Guarantee provided for the arbitration in that forum of any disputes relating to the Guarantee. Pursuant to that paragraph, GET and A-Power each appointed one arbitrator, and the third arbitrator completing the panel was appointed by HKIAC. Award ¶¶ 9–12. After receiving evidence and conducting a hearing with both parties, each represented by counsel, *see* Award ¶¶ 49–51, on August 8, 2012, the Hong Kong International Arbitration Centre Tribunal (the "Tribunal") in Hong Kong issued an award in favor of GET, ordering that A-Power pay GET $359,997,368.50 plus interest accruing at a rate of $103,368.31 per diem. Pet. ¶ 14; Award ¶ 325.

---

[2] The Agreement and Guarantee, which GET also submitted as exhibits in this action, are written predominantly in Chinese characters. *See* Pet., Exs. B & C. However, the Award is written in English and contains English translations and descriptions of the pertinent provisions. *See, e.g.*, Award ¶ 71 (describing the Agreement); *id.* ¶ 73 (describing the Guarantee).

On October 24, 2012, GET obtained an Order enforcing the Award from the High Court of the Hong Kong Special Administrative Region Court of First Instance ("High Court"). Pet. ¶ 14; Pet., Ex. D ("High Court Final Enforcement Order").

### C.     This Action

On August 6, 2015, GET filed a petition to confirm an arbitration award, along with attached exhibits, and a supporting memorandum of law.  On November 2, 2015, after numerous attempts by GET to serve A-Power through various means, the Court authorized alternative service on A-Power through email to the last known personal and operative email address of Jinxiang Lu, A-Power's chairman, chief executive officer ("CEO"), and legal representative. Dkt. 29; *see* Dkt. 32, at 3–4 (describing GET's efforts to serve A-Power); Dkt. 11-4, at ¶ 2 ("High Court Contempt Judgment") (describing Lu's positions at A-Power).  On November 3, 2015, GET served A-Power via email of all relevant documents in this action.  Dkt. 30.  On November 23, 2015, after issuing a series of temporary restraining orders and holding a series of show cause hearings (at which A-Power failed to appear), the Court issued a preliminary injunction prohibiting A-Power from transferring or dissipating assets, and freezing $476,700,190.49[3] belonging to A-Power and related entities and ¥54,000,000 belonging to an entity called Asia New Energy Group Limited ("Asia New Energy"), on the basis of Asia New Energy's involvement in a scheme to transfer assets belonging to A-Power.  Dkt. 32.

On January 4, 2016, GET obtained a Clerk's Certificate of Default as to A-Power.  Dkt. 38.  On February 5, 2016, the Court issued an Order to Show Cause as to why judgment should not be entered against A-Power and related entities and why A-Power and related entities should

---

[3] $476,700,190.49 represents the $359,997,368.50 in principal awarded by the Tribunal (which itself comprises $314,411,943.79 in principal owed plus $45,585,424.71 in accrued interest through July 21, 2012), plus $116,702,821.99 in accrued interest from August 8, 2012, the date of the Award, to September 10, 2015, the date of GET's initial request for equitable relief.

not be permanently enjoined from transferring or dissipating assets until the judgment is paid in full, and setting a hearing for March 2, 2016. Dkt. 40.[4] The Order to Show Cause was served via email on A-Power on February 8, 2015. Dkt. 42. A-Power failed to appear at the hearing, and has not otherwise appeared in this action.

## II.     Confirmation of the Arbitration Award

### A.     Legal Standard

Arbitral awards are not self-enforcing. Rather, they "must be given force and effect by being converted to judicial orders by courts." *Power Partners MasTec, LLC v. Premier Power Renewable Energy, Inc.*, No. 14 Civ. 8420 (WHP), 2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)).

Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08, which codifies the New York Convention, governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered commercial," except when those relationships are "entirely between citizens of the United States" and are otherwise domestic in nature. 9 U.S.C. § 202. Applying § 202, the Second Circuit has held that where an agreement to arbitrate "involve[s] parties domiciled or having their principal place of business outside [the United States]," that agreement is governed by the Convention. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983)). Because GET is incorporated outside of the United States, the New York Convention governs the Petition. *See Farrell v. Subway Int'l, B.V.*, No. 11 Civ.

---

[4] Although the Court's Order was styled as an "Order to Show Cause for Default Judgment," as explained *infra*, confirmation of an arbitration award proceeds as an unopposed motion for summary judgment.

5

08 (JFK), 2011 WL 1085017, at *1 (S.D.N.Y. Mar. 23, 2011) (New York Convention governs arbitration agreements involving "at least one foreign party").

When a party seeks confirmation of an arbitral award under the New York Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207; *see Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005).  "Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award."  *Encyclopaedia Universalis*, 403 F.3d at 90.  "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies."  *See Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) (quoting *Encyclopaedia Universalis*, 403 F.3d at 90).  "The burden is a heavy one, as the showing required to avoid summary confirmance is high."  *Id.* (quoting *Encyclopaedia Universalis*, 403 F.3d at 90).

"Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is 'very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'"  *Encyclopaedia Universalis*, 403 F.3d at 90 (ellipses in original) (quoting *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23 (additional internal citations omitted)); *accord Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("The court's function in confirming or vacating an arbitration award is severely limited." (citation and alteration omitted)).  Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'"  *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union,*

*AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

However, "[a] petition to confirm an arbitral award is 'treated as akin to a motion for summary judgment.'" *STX Pan Ocean Shipping Co. Ltd. v. Progress Bulk Carriers Ltd.*, No. 12 Civ. 5388 (RJS), 2013 WL 1385017, at *2 (S.D.N.Y. Mar. 14, 2013) (quoting *D.H. Blair*, 462 F.3d at 109). That is true even if the petition is unopposed. *See D.H. Blair*, 462 F.3d at 110 ("[G]enerally a district court should treat an unanswered . . . petition to confirm/vacate [an arbitral award] as an unopposed motion for summary judgment.").

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citations omitted). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted).

However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[E]ven when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if

7

it has met its burden of demonstrating that no material issue of fact remains for trial."). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*." *D.H. Blair*, 462 F.3d at 110 (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244). Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law[,] . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007) (citing 9 U.S.C. § 9; *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

**B.     Discussion**

GET asks the Court to confirm and enforce the Award against A-Power in the amount of $359,997,368.50 plus interest at the rate of $103,368.31 per diem. Based on its review of the Award and GET's submissions, and having undertaken the limited review that is appropriate here, the Court agrees that there is no material issue of fact for trial, and that the Award was properly entered.

The three arbitrators, one of whom was appointed directly by A-Power, acted within the scope of the authority granted to them by the parties in ¶ 18 of the Guarantee. Award ¶ 9. The panel unanimously concluded, in a thorough and thoughtful opinion, that Lucky Wind's failure to pay specified progress payments and issue the appropriate purchase orders "amounted to breaches of the Agreement," Award ¶ 269, and that GET was entitled to recover from A-Power, pursuant to the Guarantee, the liquidated damages provided by the Agreement's termination provision, Award ¶ 312. The panel carefully considered A-Power's counterarguments and found them generally unavailing. Award ¶¶ 245–316.

8

There was, therefore, at least a "barely colorable justification for the outcome reached," *Landy Michaels Realty Corp.*, 954 F.2d at 797, and indeed substantially more. And the Court is unaware of any reason why any of the seven exclusive defenses to confirmation and enforcement of a foreign arbitration award under Article V of the New York Convention would apply to the present case. *See* 9 U.S.C. § 207; New York Convention, art. V; Pet. ¶¶ 17–18; GET Br. 9–10.

Accordingly, the Court confirms the arbitral award against A-Power in favor of GET in the amount of $359,997,368.50 plus interest at the rate of $103,368.31 per diem, and will enter judgment in the amount of $476,700,190.49.[5]

## III. Enforcement Against Alter Egos of A-Power

In addition to confirmation of the Award and enforcement against A-Power, GET also seeks enforcement of the Award against various entities related to A-Power under a theory of alter-ego liability. Affidavit of Joseph L. Clasen, Esq., dated January 13, 2016 ("Clasen 1/13/16 Aff.") ¶¶ 22–33.[6] Specifically, GET seeks enforcement against:

1. Lu, A-Power's chairman, CEO, and legal representative;

2. A number of subsidiaries, owned wholly or in part by A-Power or other A-Power subsidiaries, namely, Head Dragon Holdings Limited, Liaoning GaoKe Energy Group Company Limited, Liaoning GaoKe (High-Tech) Energy Saving and Thermo-electricity Design Research Institute, Liaoning International Construction and Engineering Group Limited, Shoulong Energy Co., Ltd., Shenyang Power Group Ltd., EVATECH Co., Ltd., Easy Flow Limited, Shenyang (Jinxiang) Gold Luck Electric Power Equipment Co., Ltd., Shenyang (Ruixiang) Lucky Wind Power

---

[5] As described *supra* note 3, this amount includes interest accrued through September 10, 2015. The Court will enter judgment in that amount because it was the amount that the Court specified, at GET's request, in its Order to Show Cause for Default Judgment. Dkt. 40.

[6] In support of the Order to Show Cause for Default Judgment, GET submitted an affidavit of its counsel, Clasen 1/13/16 Aff., which serves, functionally, as a legal memorandum in support of confirmation of the award and enforcement against A-Power and the related entities. The affidavit was provided to the Court in hard copy along with GET's proposed Order to Show Cause. The Court hereby directs GET to file a copy of this affidavit on ECF forthwith.

> Equipments Co., Ltd., Shenyang Longxiang Wind Power Technologies Limited, and Shenyang Yixiang Wind Power Equipment Limited; and
>
> 3. Asia New Energy, a Hong Kong company that has the same registered office as one of the wholly owned A-Power subsidiaries (Easy Flow Limited); of which Lu is a former director; and to which Lu transferred substantial assets in 2012, an act for which he was found in contempt by the High Court. High Court Contempt Judgment ¶¶ 13–16.

Clasen 1/13/16 Aff. ¶¶ 22–33. The Court will refer to Lu and these entities collectively as the "alleged alter egos."

The Court declines to enforce the Award as to the alleged alter egos, without reaching the issue as to whether they would qualify as alter egos, for two reasons.

First, the alleged alter egos are not parties to this action. The Petition and the summons served on A-Power through Lu's email address name only A-Power as the respondent in this action. *See* Pet.; Dkt. 13 (summons). Because the alleged alter egos are not parties to this action, the Court cannot enter judgment against them. *Cf. Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) ("It is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)) (internal quotation marks omitted)).[7]

---

[7] The statement in *CBF lndustria de Gusa S/A/ v. AMCI Holdings, Inc.*, 14 F. Supp. 3d 463, 476 (S.D.N.Y. 2014), cited by GET, that "[d]etermining alter-ego liability against a nonparty in an action brought by an award party is within the purview of a court sitting in secondary jurisdiction under the New York Convention as it is within the scope of an enforcement action," is not to the contrary. As the context of *CBF Industria* makes clear, the "nonpart[ies]" referenced in the quotation, although nonparties to the underlying arbitration proceeding, were defendants in the proceeding before the court. *See id.* at 466.

Second, even if the alleged alter egos had been made parties to this action, the determination of alter ego liability would be inappropriate in the context of this action to confirm the arbitration award. In *Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir. 1963), the Second Circuit held "that an action for confirmation [of an arbitration award] is not the proper time for a District Court to 'pierce the corporate veil.'" In *Orion*, the petitioner sought to hold a parent entity liable for an arbitration award entered against a subsidiary, claiming the parent was the alter ego of the subsidiary "shell" company. *Id.* In explaining why such a determination should not be made in the context of a confirmation action, the Second Circuit explained:

> This [confirmation] action is one where the judge's powers are narrowly circumscribed and best exercised with expedition. It would unduly complicate and protract the proceeding were the court to be confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported 'alter ego'.

*Id.* The *Orion* court stated, however, that the inability to enforce an arbitration award under an alter ego theory of liability in the context of a confirmation action does not preclude a petitioner from bringing a separate action to do so. *Id.*

*Orion* remains good law. *See Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46–47 (2d Cir. 1994) (recognizing *Orion*'s continued vitality, but distinguishing it from the instant case, which did not require piercing the corporate veil nor extensive fact finding); *see also, e.g.*, *Daebo Int'l Shipping Co. v. Americas Bulk Transp. (BVI) Ltd.*, No. 12 Civ. 4750 (PAE), 2012 WL 6212614, at *3 (S.D.N.Y. Dec. 13, 2012) ("[U]nder Second Circuit precedent, a petition to confirm a foreign arbitral award is an inappropriate forum to adjudicate alter-ego collection proceedings."); *Glencore AG v. Bharat Aluminum Co. Ltd.*, No. 10 Civ. 5251 (SAS), 2010 WL 4323264, at *6 (S.D.N.Y. Nov. 1, 2010) ("[R]equesting that the Court pierce the corporate veil for purposes of liability during the confirmation proceeding

11

contravenes clear Second Circuit precedent that an arbitration award may not be enforced under an alter ego theory against the parent corporation of the party subject to the award.").[8]

There are two exceptions to *Orion* that limit its reach, but neither applies here.

The first, initially articulated by then-District Judge Leval, applies where "the complaint specifies two grounds for subject matter jurisdiction," such that the enforcement action can "be construed as a separate action [from the confirmation action] to enforce the arbitration award against nonparties to the arbitration." *Sea Eagle Mar., Ltd. v. Hanan Int'l, Inc.*, No. 84 Civ. 3210 (PNL), 1985 WL 3828, at *2 (S.D.N.Y. Nov. 14, 1985) (citing as the two jurisdictional grounds Title 9 U.S.C. (the FAA) and 28 U.S.C. § 1333 (general admiralty and maritime jurisdiction)); *see also, e.g.*, *Overseas Private Inv. Corp. v. Marine Shipping Corp.*, No. 02 Civ. 475 (TPG), 2002 WL 31106349, at *3 (S.D.N.Y. Sept. 19, 2002) (citing *Sea Eagle*) (asserting that there would be subject matter jurisdiction if the action proceeded as a separate action against the alter ego, but not specifying the separate jurisdictional basis); *Generica Ltd. v. Pharm. Basics, Inc.*, No. 95 C 5935, 1996 WL 535321, at *9 (N.D. Ill. Sept. 18, 1996) (citing *Sea Eagle* for proposition that enforcement could be construed as a separate action, qualifying for the *Orion* exception, under diversity jurisdiction), *aff'd*, 125 F.3d 1123 (7th Cir. 1997).

Here, however, enforcement of the arbitration award against the alleged alter egos cannot be construed as a separate enforcement action. Putting aside the fact, noted earlier, that the alleged alter egos are not parties to this action such that a separate action could ostensibly be

---

[8] GET's citation to *Careccia v. Macrae*, No. 05 Civ. 1628, 2005 WL 1711156, at *2 (E.D.N.Y. July 19, 2005), for the proposition that courts in this Circuit "will disregard the corporate form, or, to use accepted terminology, pierce the corporate veil, whenever necessary to prevent fraud or to achieve equity," is inapposite, as that case did not involve the confirmation or enforcement of an arbitration award.

maintained against them, there is no separate jurisdictional basis for such an enforcement action here. GET argues that there is dual jurisdiction under 28 U.S.C. § 1331, general federal question jurisdiction, and 9 U.S.C. § 203, which provides jurisdiction for cases falling under the New York Convention. Clasen 1/13/16 Aff. ¶ 27; Pet. ¶ 5.[9] But as the Petition itself seems to recognize, these two bases of jurisdiction coincide—the FAA is simply the source of federal question jurisdiction. *See* Pet. ¶ 5 (stating that New York Convention, codified in the FAA at 9 U.S.C. § 201, *et seq.*, "expressly confers federal-question jurisdiction"); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions *arising under the Constitution, laws, or treaties of the United States*." (emphasis added)); 9 U.S.C. § 203 ("An action or proceeding falling under the [New York] Convention shall be deemed to *arise under the laws and treaties of the United States*." (emphasis added)); *see also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, No. 92 Civ. 7916 (SWK), 1993 WL 362391, at *3 (S.D.N.Y. Sept. 14, 1993) ("It is . . . well established that the FAA does not provide an independent basis of subject matter jurisdiction . . . [but] does provide for federal question jurisdiction under appropriate treaties to which the United States is a signatory." (internal citations omitted)), *aff'd in part, remanded in part on other grounds*, 23 F.3d 41 (2d Cir. 1994).

GET argues that a separate basis for subject matter jurisdiction over a separate enforcement proceeding could be maintained on the basis of diversity jurisdiction. Clasen 1/13/16 Aff. ¶ 27 (citing 28 U.S.C. § 1332). But that is not so. GET and A-Power are both foreign entities; for diversity purposes, GET is considered a citizen of China and A-Power is considered a citizen of the British Virgin Islands and China. *See* Pet. ¶¶ 3–4; *Bayerische*

---

[9] The Petition incorrectly cites to 9 U.S.C. § 205, which provides for removal of actions falling under the New York Convention.

*Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012) ("For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business."). Because both GET and A-Power are aliens for the purposes of diversity analysis, citizenship is not diverse. *Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000) ("[D]iversity i[s] . . . defeated if another alien party is present on the other side of the litigation." (second alteration in original) (quoting *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989))); *see also Productos Mercantiles*, 1993 WL 362391, at *3 (no diversity jurisdiction when aliens present both as plaintiffs and defendants) (collecting cases).

The second exception to *Orion* applies where "a claim of piercing the corporate veil . . . would not unduly complicate the action of the court with respect to the arbitration award." *Overseas*, 2002 WL 31106349, at *3 (citing *District 15, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Numberall Stamp and Tool Co.*, No 85 Civ. 8561 (SWK), 1987 WL 19285 (S.D.N.Y. Oct. 28, 1987)). The Second Circuit has approved of this exception in a limited circumstance—where the determination to be made is whether a nonparty to the arbitration is the successor to the arbitration party. *Productos Mercantiles*, 23 F.3d at 47. In holding that *Orion* did not preclude the district court from determining, in the case before it, whether the nonparty was a successor in interest, the Second Circuit emphasized that the inquiry did "not require the court to pierce the corporate veil [or] require the court to engage in extensive fact-finding." *Id.* The determination of successor liability in *Productos Mercantiles* was also distinguishable from the theory of parent company alter ego liability in *Orion* because, in *Productos Mercantiles*, the underlying arbitration concerned rights under a licensing agreement that expressly provided for liability of the parties' successors and assigns. *Id.* at 43, 46–47. Other district court cases have,

however, applied this second exception in cases not involving successor liability. *See Overseas*, 2002 WL 31106349, at *1, *3 (allowing enforcement action to proceed against principal of entity that was party to the arbitration award); *Numberall*, 1987 WL 19285, at *1 (case did not involve complex factual inquiry where party to arbitration had "removed essentially all of its production facilities" to a related nonparty corporate entity, and the two entities shared common officers (internal quotation marks omitted)).

Although GET maintains that the relationships between A-Power, the party to the arbitration, and the alleged alter egos are sufficiently straightforward to similarly permit adjudication of alter ego liability in this proceeding, Clasen 1/13/16 Aff. ¶¶ 28–33, the Court finds otherwise, for several reasons. Most important, all the alleged alter egos (with the exception of Lu and Asia New Energy) are related to A-Power through parent-subsidiary relationships, either in that they are owned wholly or in part by A-Power or other A-Power subsidiaries. Clasen 1/13/16 Aff. ¶ 32. The parent-subsidiary relationship is the precise relationship that *Orion* held a court should not delve into in the context of confirming an arbitration award. *Orion*, 312 F.2d at 301; *see Productos Mercantiles*, 23 F.3d at 46–47 (distinguishing between determining parent-subsidiary relationship and successor-in-interest relationship in determining ability to enforce arbitration award against nonparty in a confirmation action). Thus, contrary to GET's argument, this case is precisely the type "in which the Court must delve into the details of the corporation relationship between a party and a non-party." *Productos Mercantiles*, 1993 WL 362391, at *9.

Moreover, untangling the relationship between the various alleged alter egos and A-Power does not present a straightforward task. The subsidiary entities against whom GET seeks a determination of alter ego liability make up a web of corporate entities owned wholly or in part

by A-Power either directly or indirectly through other A-Power subsidiaries. Clasen 1/13/16 Aff. ¶ 32; *see generally* Dkt. 11-5 (137-page investigative report regarding the assets and relationships between A-Power, its subsidiaries and related corporate entities, and Lu, submitted by GET in support of its application for preliminary equitable relief). Parsing the relationship with Asia New Energy is yet more intricate, as Asia New Energy is not a subsidiary of A-Power, but rather is linked to A-Power through Lu, a *former* director and *former* 90% owner. High Court Contempt Judgment ¶ 14.[10] And as to Lu, while he is the chairman, CEO, and legal representative of A-Power, A-Power appears to be a company of significant size, and Lu is not (or at least was not during the relevant period) the only senior executive at A-Power. *See* Dkt. 11-7, at 11, 348, 350 (A-Power Form 20-F, filed March 31, 2010, showing more than $311 million in revenue in 2009, and listing Kin Kwong (Peter) Mak as the company's Chief Financial Officer in its Sarbanes-Oxley certifications). And contrary to GET's argument earlier in this litigation when seeking preliminary equitable relief, *see* Dkt. 11, at 9, the High Court did not already determine that Lu was A-Power's alter ego, but rather held him in contempt in his capacity as A-Power's chairman, CEO, and legal representative for his role in violating an order of the High Court requiring A-Power not to dissipate or dispose of any of its assets, *see* High Court Contempt Judgment ¶¶ 1, 9, 57. This case thus stands in contrast to those on which GET

---

[10] As a further complication, GET does not actually seek to enforce the Award itself against Asia New Energy, but rather seeks to have the Court enter judgment for the amount that Asia New Energy paid to A-Power subsidiary Head Dragon Holdings Limited—which proceeds were deposited in an unknown account—in exchange for shares in Liaoning High-Tech Energy Group Company Limited, another A-Power subsidiary. Clasen 1/13/16 Aff. ¶¶ 32, 46; High Court Contempt Judgment ¶ 13. GET may well be able, in the future, to establish Asia New Energy's liability for the value of the assets transferred and/or secreted by A-Power (through Head Dragon Holdings Limited) based on Asia New Energy's involvement in the transfer and relationship to A-Power and Lu, but that issue is not properly for the Court to resolve here in the context of confirming an arbitral award that did not pertain to the transfer.

relies, which involved significantly less complex alter ego determinations.  *See Overseas*, 2002 WL 31106349, at *1, *3 (allowing case to proceed to determine liability of single principal as alter ego); *Numberall*, 1987 WL 19285, at *1 (addressing two corporate entities that had combined essentially all of their activities); *see also CBF Industria*, 14 F. Supp. 3d at 476–79 (declining to address alter ego or successor-in-interest determination because it would be factually complex).

In declining to reach the issue of whether the Award should be enforced against the alleged alter egos, the Court acknowledges that it previously granted GET preliminary equitable relief as to Lu and those entities, including referring to Lu in passing in the Court's prior orders as A-Power's alter ego.  And the Court is troubled by the practical reality that the more limited ruling here will not itself block Lu's efforts to evade—through the use of various corporate forms and deceptive transfers—GET's collection on the Award.  Nevertheless, after careful review of the caselaw as applied to the factual context at hand, the Court finds that the issue of alter ego liability is not properly before it in this confirmation action.  Of course, as *Orion* holds, this in no way precludes GET, in a separate proceeding, from pursuing liability against the alleged alter egos with respect to the judgment that the Court enters here against A-Power.  *Orion*, 312 F.2d at 301.  The Court, of course, expresses no view here as to the merits of whether, in such a proceeding, the alleged alter egos should be liable for the judgment entered here.

## IV.   Permanent Injunction

### A.   Legal Standards

"The party requesting permanent injunctive relief must demonstrate (1) irreparable harm . . . and (2) actual success on the merits."  *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012).  Thus, the standard for a permanent injunction is essentially the same as for a preliminary

injunction, the difference being that the plaintiff must show actual success rather than a likelihood of success. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). In addition,

> a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010) ("[A]lthough today we are not called upon to extend *eBay* beyond the context of copyright cases, we see no reason that *eBay* would not apply with equal force to an injunction in *any* type of case." (emphasis in original)).

### B. Discussion

GET seeks a permanent injunction freezing the assets of A-Power and the alleged alter egos pending full payment of the judgments against them. As noted, the Court has previously issued a preliminary injunction to the same effect. Because the Court finds that it cannot, in this action, enforce the Award against the alleged alter egos, the Court now awards GET a permanent injunction freezing the assets of A-Power only.

For the reasons stated *supra* sections II & III, GET has established actual success on the merits with respect to A-Power, but not with respect to the alleged alter egos. Thus, the Court may award a permanent injunction against A-Power alone.

The other requirements and factors governing permanent injunctions support granting such relief against A-Power. GET has established that it will be irreparably harmed in the absence of a permanent injunction, and that there is no adequate remedy at law, because of GET's inability to collect on the judgment to be awarded against A-Power and A-Power's efforts

to date to evade collection and secrete assets.  *See* High Court Contempt Judgment (holding Lu in contempt for dissipating assets in violation of an order freezing A-Power's assets); *Sea Carriers Corp. v. Empire Programs, Inc.*, No. 04 Civ. 7395 (RWS), 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006) (injunction may be issued where there "is a showing of intent to frustrate any judgment on the merits") (citing *Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986) and *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985), which granted injunctions against actions taken by parties to encumber or hide assets).  The Court also finds that the balance of hardships decidedly favors awarding GET equitable relief, as GET has been deprived of its ability to collect on an award to which it is entitled, and the injunction restrains A-Power's use of assets that may not be lawfully withheld from GET.  Finally, the public interest is not disserved by the issuance of the injunction, because the public interest is served by the enforcement of parties' rights under their contract (as determined by the Tribunal), and the awards and judgments of arbitration proceedings and the courts.

Mindful that A-Power, through its officers and subsidiaries, has utilized other corporate entities to avoid GET's collection efforts, the Court has altered the language of the preliminary injunction previously issued, borrowing language from previous orders of the Tribunal and High Court, to assure GET fulsome relief.

## CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the arbitration award issued on August 8, 2012 by the Hong Kong International Arbitration Center in the matter of GE Transportation (Shenyang) Co., Ltd. v. A-Power Energy Generation Systems, Ltd. is confirmed, and judgment shall enter in favor of GE Transportation (Shenyang) Co., Ltd. against A-Power Energy Generation Systems, Ltd. in the

amount of $476,700,190.49, comprising $359,997,368.50 in principal and $116,702,821.99 in accrued interest through September 10, 2015.

**IT IS FURTHER ORDERED** that, until judgment is paid in full, A-Power Energy Generation Systems, Ltd. is permanently restrained, enjoined and prohibited from directly or indirectly transferring, dissipating or otherwise disposing of or diminishing in value any of its assets wherever they are located, whether in its own name or not, and whether solely or jointly owned, or directly or indirectly controlled. This prohibition requires A-Power, *inter alia*, to exercise its control over any entities or persons owned or controlled by A-Power to ensure that they and/or their subsidiaries do not remove, encumber, dissipate, or otherwise dispose of or deal with or diminish in value any of their assets wherever they are located.

**IT IS FURTHER ORDERED** that, within 14 days of this Opinion & Order, GET or its attorneys shall effect service of a copy of this Opinion & Order by serving the same upon A-Power, via email directed to Lu's last known personal and operative email address, shoulong@188.com, in accordance with this Court's Order Authorizing Alternative Service on A-Power Energy Generation Systems, Ltd. dated November 2, 2015, Dkt. 29; and shall thereafter forthwith file an affirmation of such service on the docket of this case.

**IT IS FURTHER ORDERED** that, within 14 days of this Opinion & Order, GET shall file a letter informing the Court if there is any reason why, in light of the rulings above, this case should not be closed.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: June 22, 2016
New York, New York

20